# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARK CHEESEMAN, TIMOTHY CONNELLY, and FIREARMS POLICY COALITION, INC., | Case No. 1:22-cv-4360 |
| Plaintiffs, | |
| v. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, CHRISTINE A. HOFFMAN, in her official capacity as Acting Gloucester County Prosecutor, and BRADLEY D. BILLHIMER, in his official capacity as Ocean County Prosecutor, | |
| Defendants. | |

LAW OFFICE OF ERIC M. MARK
By: Eric M. Mark, Esq.
201 Washington St.
Newark, NJ 07102
973-453-2009
EricM@EricMarkLaw.com

JOSHPE MOONEY PALTZIK LLP
By:  Brett Joshpe, Esq.[1]
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 777-7857
bjoshpe@jmpllp.com

*Attorneys for Plaintiffs*

---

[1] *Pro hac vice* admission forthcoming.

## <u>LOCAL CIVIL RULE 10.1 STATEMENT</u>

The street and/or post office addresses of the parties to this action are:

Mark Cheeseman
22 Alden Road
Blackwood, NJ 08012

Timothy Connolly
797 Sterling Avenue
Brick, NJ 08723

Firearms Policy Coalition, Inc.
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149

Matthew J. Platkin
Acting Attorney General of New Jersey
Office of the Attorney General
RJ Hughes Justice Complex
Trenton, NJ 08625-0080

Patrick J. Callahan
Superintendent of the New Jersey State Police
P.O. Box 7068
West Trenton, NJ 08627

Christine A. Hoffman
Acting Gloucester County Prosecutor
70 Hunter Street
Woodbury, NJ 08096

Bradley D. Billhimer
Ocean County Prosecutor
119 Hooper Avenue
Toms River, NJ 08753

Plaintiffs MARK CHEESEMAN ("CHEESEMAN"), TIMOTHY CONNOLLY ("CONNOLLY"), and FIREARMS POLICY COALITION, INC. ("FPC"), by and through counsel of record, bring this complaint against Defendants and allege as follows:

## <u>INTRODUCTION</u>

1.     Under the Second and Fourteenth Amendments to the United States Constitution, individuals who are "not disqualified from the exercise of Second Amendment rights" and thus are legally eligible to possess and acquire firearms—including Plaintiffs Cheeseman and Connolly, and all similarly situated members of Plaintiff Firearms Policy Coalition, Inc.—have a fundamental, constitutionally guaranteed right to keep and bear firearms in common use for lawful purposes like self-defense.

2.     But the State of New Jersey's statutes, N.J. STAT. ANN. §§ 2C:39-5(f); 2C:39-1(w), and through Defendants' regulations, policies, enforcement practices, and customs applying those statutes (all of which are collectively hereinafter referred to as "New Jersey's Ban" or the "Ban"), Defendants have and continue to enforce against Plaintiffs and all non-prohibited persons in New Jersey an expansive criminal regime that is nothing short of an unconstitutional prohibition on the acquisition, possession, transportations, lawful use, and disposition of common

firearms—pejoratively labeled "assault firearms," making it a serious crime for non-prohibited citizens of New Jersey to exercise their fundamental right to keep and bear such arms. And the very limited exemptions from this broad criminal statutory scheme do not allow typical non-prohibited individuals to keep and bear these common firearms.

3. New Jersey's Ban unconstitutionally infringes upon Plaintiffs' fundamental, individual right to keep and bear arms. New Jersey's Ban and Defendants' actual and threatened enforcement of the same must be declared unconstitutional and enjoined under the Second Amendment's text, informed by relevant history, and the Supreme Court's precedents so that Plaintiffs Cheeseman and Connolly, all similarly situated members of Plaintiff FPC, and non-prohibited individuals like them can exercise their constitutional right to keep and bear these common firearms for lawful purposes like self-defense.

## JURISDICTION & VENUE

4. This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New Jersey, of the rights, privileges, or immunities secured by the United States Constitution.

5. Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

## PARTIES

6.     Plaintiff Mark Cheeseman is a natural person, a resident of Gloucester County, New Jersey, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Cheeseman is a member of Plaintiff FPC.

7.     Plaintiff Timothy Connolly is a natural person, a resident of Ocean County, New Jersey, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Connolly is a member of Plaintiff FPC.

8.     Plaintiff FPC is a nonprofit organization incorporated under the laws of Delaware with a place of business in Clark County, Nevada. The purposes of FPC include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf its members, including the named Plaintiffs herein, who seek to exercise their right to keep and bear common semiautomatic arms for lawful purposes in New Jersey.

9.     Defendant Matthew J. Platkin is the Acting Attorney General of New Jersey. In such capacity, Platkin is the head of the State's Office of the Attorney

General (the "OAG") and Department of Law and Public Safety, which includes the New Jersey State Police (the "NJSP"), and holds statewide criminal jurisdiction to investigate and prosecute any indictable offense; he is therefore responsible for executing, delegating, or supervising the laws and regulations governing the possession of firearms and magazines and impose criminal sanctions for violations of the same. His official address is the RJ Hughes Justice Complex, Trenton, NJ 08625-0080. He is being sued in his official capacity.

10.     Defendant Patrick J. Callahan is the Superintendent of the New Jersey State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, NJ 08628. He is being sued in his official capacity.

11.     Defendant Christine A. Hoffman is the Acting County Prosecutor for Gloucester County. As County Prosecutor, Hoffman "is responsible for the prosecution of crimes committed in the county" and has "authority to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *Yurick v. State*, 875 A.2d 898, 903 (N.J. 2005) (quotations omitted). Her official address is Gloucester County Prosecutor's Office,

70 Hunter Street, Woodbury, NJ 08096. She is being sued in her official capacity.

12.     Defendant Bradley D. Billhimer is the County Prosecutor for Ocean County. As County Prosecutor, Billhimer "is responsible for the prosecution of crimes committed in the county" and has "authority to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." *Yurick*, 875 A.2d at 903. His official address is Ocean County Prosecutor's Office, 119 Hooper Avenue, Toms River, NJ 08753. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

## I.     NEW JERSEY'S BAN

13.     New Jersey applies the pejorative label of "assault firearm" to a large number of constitutionally protected firearms and criminalizes their possession. N.J. STAT. ANN. §§ 2C:39-1(w), 2C:39-5(f).

14.     Specifically, New Jersey mischaracterizes as an "assault firearm" and bans possession of any firearm of the following models:

- Algimec AGM1 type
- Any shotgun with a revolving cylinder such as the "Street Sweeper" or "Striker 12"
- Armalite AR-180 type
- Australian Automatic Arms SAR
- Avtomat Kalashnikov type semi-automatic firearms
- Beretta AR-70 and BM59 semi-automatic firearms;
- Bushmaster Assault Rifle
- Calico M-900 Assault carbine and M-900

- CETME G3
- Chartered Industries of Singapore SR-88 type
- Colt AR-15 and CAR-15 series
- Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types
- Demro TAC-1 carbine type
- Encom MP-9 and MP-45 carbine types
- FAMAS MAS223 types
- FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms
- Franchi SPAS 12 and LAW 12 shotguns
- G3SA type
- Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1
- Intratec TEC 9 and 22 semi-automatic firearms
- M1 carbine type
- M14S type
- MAC 10, MAC 11, MAC 11-9mm carbine type firearms
- PJK M-68 carbine type
- Plainfield Machine Company Carbine
- Ruger K-Mini-14/5F and Mini-14/5RF
- SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types
- SKS with detachable magazine type
- Spectre Auto carbine type
- Springfield Armory BM59 and SAR-48 type
- Sterling MK-6, MK-7 and SAR types
- Steyr A.U.G. semi-automatic firearms
- USAS 12 semi-automatic type shotgun
- Uzi type semi-automatic firearms
- Valmet M62, M71S, M76, or M78 type semi-automatic firearms
- Weaver Arm Nighthawk

N.J. Stat. Ann. § 2C:39-1(w)(1).

15.     Also prohibited is "[a]ny firearm manufactured under any designation which is substantially identical to any of the" listed firearms. *Id.* § 2C:39-1(w)(2).

The Attorney General has issued guidelines specifying that a semiautomatic rifle is "substantially identical" to the listed firearms if it can accept a detachable magazine and has two of the following features:

- a folding or telescoping stock;
- a pistol grip that protrudes conspicuously beneath the action of the weapon;
- a bayonet mount;
- a flash suppressor or threaded barrel designed to accommodate a flash suppressor;
- a grenade launcher.[2]

Division of Criminal Justice, *Guidelines Regarding the "Substantially Identical" Provision in the State's Assault Firearms Laws* (Aug. 19, 1996), https://bit.ly/3aLYlvU.

16.     New Jersey categorically prohibits possession of all such firearms "unless certain very narrow exceptions apply." *Coal. of N.J. Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 670 (D.N.J. 1999). The narrow exceptions include rifles designated by the Attorney General as "legitimate" target-shooting firearms (if registered and owned by an individual who has been a member of a rifle or pistol club since at least 1990), N.J. STAT. ANN. § 2C:58-12, rifles that have been rendered inoperable, *id.* § 2C:58-13, rifles owned by a member of the military or a law enforcement officer who has completed an approved firearms training course, *id.* §

---

[2] Plaintiffs here do not challenge New Jersey's separate ban on grenades. *See* N.J. STAT. ANN. § 2C:39-3(a).

2C:39-6(a), (j); or rifles owned by an individual who has received a license by demonstrating "public safety and welfare" require him or her to possess a so-called "assault firearm," *id.* § 2C:58-5.

17.    Violations of New Jersey's Ban are punishable by ten years in prison and a $150,000 fine. N.J. STAT. ANN. §§ 2C:43-3(a)(2), 2C:43-6(a)(2).

18.    A conviction under New Jersey's Ban would result in a lifetime ban on the person's possession of firearms and ammunition under the federal Gun Control Act and state law, adding further penalty to a non-prohibited person's exercise of rights and conduct prohibited by New Jersey's Ban. *See, e.g.,* 18 U.S.C. § 922(g).

19.    Without conceding the constitutionality of the other provisions of New Jersey's Ban, Plaintiffs in this case challenge New Jersey's prohibitions only as they relate to semiautomatic rifles.[3]

## II.    NEW JERSEY'S BAN PROHIBITS LAW-ABIDING CITIZENS FROM ACQUIRING OR POSSESSING RIFLES IN COMMON USE

20.    Semiautomatic rifles "traditionally have been widely accepted as lawful possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and they too are in common use presently, *see Heller*

---

[3] The statute also designates as "assault firearms" semiautomatic rifles "with a fixed magazine capacity exceeding 10 rounds" (not including .22 caliber rimfire rifles with tubular magazines) and any firearm equipped with a "bump stock." Without conceding the constitutionality of these provisions, Plaintiffs do not challenge either of these categories of "assault firearms" in this case.

*II*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use' as the plaintiffs contend."). *See also Miller v. Bonta*, 542 F. Supp. 3d 1009 (S.D. Cal. 2021).

21.   Rifles built on an AR-style platform are a paradigmatic example of the type of arm New Jersey bans. AR-15 rifles are among the most popular firearms in the nation, and they are owned by millions of Americans. A recent survey of gun owners indicates that about 24.6 million Americans have owned up to 44 million AR-15 or similar rifles. *See* William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1 (May 13, 2022), https://bit.ly/3yPfoHw. And according to industry sources, more than one out of every five firearms sold in recent years were rifles of the type banned by New Jersey. Nat'l Shooting Sports Found., Inc., *Firearms Retailer Survey Report, 2013* at 11.

22.   The banned semiautomatic rifles, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *See Staples*, 511 U.S. at 602 n.1. What is more, the designation "assault weapons" (like New Jersey's "assault firearm" moniker) is a complete misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

23.   Most AR-style firearms are chambered for 5.56x45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and very common

intermediate (not "high-powered") cartridge that is particularly well suited for home-defense purposes.

24.     An AR-15 rifle is an optimal firearm to rely on in a self-defense encounter. Like the AR-15 generally, the specific features prohibited by the New Jersey's Ban aid home defense. A flash suppressor, for example, not only reduces the chances that a home-invader will mark his victim's position; it also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994).

25.     Similarly, folding and telescoping stocks increase maneuverability in tight home quarters, *id.* at 398–99, as well as enabling safe storage of defense instruments in accessible spaces. A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively.

26.     Folding and telescoping stocks also increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces and making the rifle maneuverable in confined spaces. *Id.* at 398–99.

27.     Pistol grips improve accuracy and reduce the risk of stray shots by stabilizing the firearm while firing from the shoulder. *Id.* at 396.

28.     Most all common semiautomatic rifles, including those prohibited under New Jersey's Ban, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters to reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to safely and quickly remedy malfunctions.

29.     Encounters with criminal intruders in the home are not uncommon. For instance, according to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. of Crim. L. & Criminology 150, 164 (1995); *see also* English, *National Firearms Survey, supra* at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year).

30.     Other common, lawful uses of the banned rifles are hunting and sport. At least a third of all gun-owners own a firearm for hunting or sport shooting, and

recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning a modern sporting rifle.

31.    Here again, the banned features of rifles mischaracterized as assault firearms serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks also ease carrying over long distances while hunting. Both telescoping stocks and protruding grips open hunting and sport-shooting to those for whom recoil represents a high barrier to entry. Detachable magazines have the same benefits in hunting and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. And flash suppressors promote accuracy in target-shooting and hunting (especially at dawn).

32.    By contrast, one use that is not common for so-called "assault rifles" is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." This has long been true. *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.' "). Indeed, according to FBI statistics in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (FBI 2019), https://bit.ly/3HdolNd.

33.     The arms banned as "assault firearms" under New Jersey's Ban are not both dangerous *and* unusual, as the Supreme Court defined in *Heller*. To the contrary, they are common in all respects: 1) They are common functionally, as they are all semiautomatic in their operation; 2) they are common characteristically, as they are all popular types of arms with various common characteristics like pistol grips and the like; and 3) they are common jurisdictionally, lawful to possess and use in the vast majority of states for a wide variety of lawful purposes including self-defense, proficiency training, competition, recreation, hunting, and collecting.

34.     As further proof of their status as constitutionally protected arms, they are common numerically, in that they are owned by non-prohibited by the hundreds of thousands or more. And while numerical data can be helpful in determining if a particular weapon is commonly possessed for lawful purposes, the constitutionally protected status of arms cannot turn on fact-bound sales numbers of particular makes, models, or even specific configurations. Rather, the question is a categorical analysis of type and function, set against a backdrop of historically analogous regulation and availability throughout the United States. For example, "[w]hile less popular than handguns, stun guns are widely owned and accepted as a legitimate means of self-defense across the country." *Caetano*, 136 S. Ct. 1027, 1033 (2016) (Alito, J., concurring). So too are the semiautomatic firearms in various configurations of more and less prohibited under New Jersey's Ban.

35.   A future model of a popular semiautomatic handgun, for example, a Glock model 17, will not be numerically common based on sales alone when first released because it hasn't been sold in great numbers yet. But it will nonetheless be constitutionally protected because it is categorically a common, bearable arm possessed and used for lawful purposes. The same goes for firearms prohibited under New Jersey's Ban based on semiautomatic function and characteristics, and their evolutionary and technological successors.

36.   Just like the argument "that only those arms in existence in the 18th century are protected by the Second Amendment [is] not merely wrong, but bordering on the frivolous," the "Second Amendment extends, prima facie, to all instruments that constitute bearable arms…" *Heller* at 1030 (internal quotations omitted). The fact that New Jersey's Ban may act to ban thousands of discrete configurations of common semiautomatic rifles held in respectively smaller numbers than the over-arching category of "assault firearms" as a whole is irrelevant to the constitutional inquiry under *Heller*.

37.   New Jersey's Ban is, therefore, an unconstitutional ban on keeping and bearing semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense.

## III.   THE EFFECT ON PLAINTIFFS

38.   Plaintiff Mark Cheeseman lives in Gloucester County, New Jersey.

Cheeseman intends and desires to exercise his right to keep and bear a so-called assault firearm, particularly an AR-15 style rifle, for lawful purposes, especially home defense, target shooting, and proficiency training. AR-15 style rifles are illegal under New Jersey's Ban. Cheeseman would acquire, purchase or receive, and lawfully use this firearm, were it not for Defendants' enforcement of New Jersey's Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Cheeseman continues to refrain from acquiring, possessing, and lawfully using an AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

39.     Plaintiff Timothy Connolly lives in Ocean County, New Jersey. Connolly intends and desires to exercise his right to keep and bear a so-called assault firearm, particularly an AR-15 style rifle, for lawful purposes, especially home defense and target shooting. AR-15 style rifles are illegal under New Jersey's Ban. Connolly would acquire, purchase or receive, and lawfully use this firearm, were it not for Defendants' enforcement of New Jersey's Ban. In light of Defendants' actions, including the threat of arrest, confiscation, prosecution, fine, and imprisonment, Connolly continues to refrain from acquiring, possessing, and lawfully using an AR-15 rifle or any similar firearm, for self-defense and other lawful purposes.

40.     These and other members of Plaintiff FPC intend and desire to acquire,

purchase, receive, transport, possess, or lawfully use semiautomatic rifles banned by the challenged provisions, and are subject to and adversely affected by the restrictions articulated in this complaint on "assault firearms."

41.    But for the enactment and enforcement of New Jersey's Ban, these members would forthwith obtain and possess such rifles, but cannot do so because they are considered "assault firearms."

42.    But for Defendants' enactment and enforcement of this unconstitutional Ban, and Defendants' enforcement thereof, and the criminal penalties associated with violations of the Ban, members of Plaintiff FPC, including Plaintiffs Cheeseman and Connolly, would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution for engaging in constitutionally protected, lawful conduct.

## IV.    DEFENDANTS' LAWS AND REGULATIONS VIOLATE THE SECOND AND FOURTEENTH AMENDMENTS.

43.    The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

44.    The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its

jurisdiction the equal protection of the laws."

45.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

46.     "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008) (emphasis in original).

47.     "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634–35.

48.     At the same time, indeed for this reason, "[j]ust as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582 (citations omitted).

49.     The Second Amendment "is the very product of an interest balancing by the people" and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Heller*, 554 U. S., at 635.

50.     "It is this balance—struck by the traditions of the American people—

that demands our unqualified deference." *Bruen*, 2022 U.S. LEXIS 3055 at \*31.

51.     The rifles at issue in this case are the sorts of bearable arms in common use for lawful purposes that responsible and peaceable people across the United States possess by the millions. And they are, moreover, exactly what they would bring to service in militia duty, should such be necessary.

52.     In *Heller*, the Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592.

53.     When seconds count, and the police are minutes or hours away, if they come at all—they certainly have no obligation to, *see, e.g.*, *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)—the People have a constitutional right to make use of common firearms for effective self-defense and not to be disarmed by the enactment and enforcement of New Jersey's Ban.

54.     Further, the Second Amendment protects "arms . . . of the kind in common use . . . for lawful purposes like self-defense." *Heller*, 554 U.S. at 624 (quotation marks and citation omitted).

55.     When ordinary citizens are not disqualified from exercising Second Amendment rights, the State must permit them to keep and bear for lawful purposes the common arms prohibited under New Jersey's Ban.

56.     Indeed, "[a] weapon may not be banned unless it is *both* dangerous *and*

unusual." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016); *see also Miller v. Bonta*, 2021 U.S. Dist. LEXIS 105640, at *16 (S.D. Cal. June 4, 2021) ("*Heller* asks whether a law bans a firearm that is commonly owned by law-abiding citizens for lawful purposes.").

57. The right to keep and bear common rifles guaranteed under the Bill of Rights cannot be subjected to laws and regulations that prohibit ordinary, law-abiding citizens from keeping and bearing common firearms—particularly when such schemes place these citizens under constant threat of criminal sanction for violating them.

58. The enshrinement of the right to keep and bear arms in the Second Amendment has necessarily taken such "policy choices off the table." *Id.* at 636.

59. In June 2022, the Supreme Court emphatically reaffirmed that the Second Amendment takes certain policy choices, such as outright bans, off the table. Indeed, "[i]n keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 2022 U.S. LEXIS 3055 at *20. Thus, "[t]o justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. at *20-21.

60. "Only if a firearm regulation is consistent with this Nation's historical

tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' *Id*. at *21 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

61.    Yet, this is precisely how New Jersey's Ban operates, completely shutting out ordinary, non-prohibited citizens from exercising their rights in New Jersey, specifically from exercising their right to acquire and possess common rifles that are not dangerous and unusual, contrary to this Nation's historical tradition of firearm regulation.

62.    Nothing in the text itself, nor the applicable history, of the Second Amendment supports the restrictions and burdens that New Jersey's Ban imposes on non-prohibited citizens like Plaintiffs Cheeseman and Connolly and Plaintiff FPC's members and supporters, and their right to keep and bear commonly owned firearms for all lawful purposes, including self-defense, in exercise of their fundamental right to keep and bear arms.

## COUNT ONE

**Violation of the United States Constitution**
**Second and Fourteenth Amendments**
**(42 U.S.C. § 1983)**
**(All Plaintiffs Against All Defendants)**

63.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

64.    There is an actual and present controversy between the parties.

65.    The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II.

66.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

67.    The Second and Fourteenth Amendments to the United States Constitution guarantee ordinary, law-abiding citizens of states their fundamental right to keep and bear arms.

68.    The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

69.    Individuals in New Jersey have a right to keep and bear arms, including but not limited to, buying, selling, transferring, self-manufacturing or assembling, transporting, carrying, and practicing safety and proficiency with, firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

70.    Millions of firearms of the category prohibited under New Jersey's Ban are commonly possessed and used for self-defense and other lawful purposes in the

vast majority of states.

71.    New Jersey's Ban prohibits, *inter alia*, the acquisition, possession, transportation, lawful use, and disposition of constitutionally protected firearms.

72.    42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

73.    Defendants, individually and collectively, and under color of state law at all relevant times, have deprived the fundamental constitutional rights of persons in New Jersey, including Plaintiffs Cheeseman and Connolly, and all similarly situated members of Plaintiff FPC, through enforcement of New Jersey's Ban.

74.    New Jersey's Ban is not "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," and thus, is unconstitutional, both facially, and as-applied to Plaintiffs Cheeseman and Connolly. The Ban is at odds with the plain meaning and text of the Second Amendment, Supreme Court precedent, and the extensive American history and tradition of individuals keeping and bearing common arms for self-defense and other lawful purposes.

75.    But for fear of arrest and prosecution, incarceration, and the lifetime loss of rights under such conviction, Plaintiffs Cheeseman and Connolly and Plaintiff FPC's similarly situated members would engage in constitutionally protected conduct, *inter alia*, acquiring, possessing, giving, transporting, lawfully using, transferring, and otherwise lawfully disposing of firearms, prohibited by New

Jersey's Ban.

76.     For all the reasons asserted herein, Defendants have acted in violation of, and continue to act in violation of, 42 U.S.C. § 1983, compelling the relief Plaintiffs seek.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for the following relief:

A.     A declaratory judgment that Plaintiffs Cheeseman and Connolly similarly situated members of Plaintiff FPC, and all other similarly situated individuals who are not prohibited from acquiring and possessing firearms under federal and state laws, have a fundamental right to keep and bear arms, including by acquiring, purchasing, receiving, transporting, possessing, transferring and disposing of, and lawfully using common firearms currently prohibited under New Jersey's Ban for all lawful purposes including self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

B.     A declaratory judgment that New Jersey's Ban statutes and all related regulations, policies, enforcement practices, and/or customs designed to enforce or implement the same infringe upon Plaintiffs Cheeseman and Connolly and all similarly situated members of Plaintiff FPC, fundamental right to keep and bear arms, including by acquiring, purchasing, receiving, transporting, possessing, and lawfully using such constitutionally protected firearms for all lawful purposes

including but not limited to self-defense, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

C.      A preliminary and permanent injunction prohibiting each Defendant, and Each Defendant's respective employees, officers, agents, representatives, all those acting in concert or participation with him or her, from enforcing the Ban's prohibitions on semiautomatic rifles and all related regulations, policies, and/or customs designed to enforce or implement the same;

D.      Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

E.      Any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: June 30, 2022                     Respectfully submitted,

                                         LAW OFFICE OF ERIC M. MARK

                                         /s/ Eric M. Mark
                                         By: Eric M. Mark, Esq.
                                         201 Washington St.
                                         Newark, NJ 07102
                                         973-453-2009
                                         EricM@EricMarkLaw.com

JOSHPE MOONEY PALTZIK LLP
By:  Brett Joshpe, Esq.[4]
1407 Broadway, Suite 4002
New York, NY 10018
Tel: (212) 777-7857
bjoshpe@jmpllp.com


*Attorneys for Plaintiffs*

---

[4] *Pro hac vice* admission forthcoming.