

**PHILIP D. MURPHY**
*Governor*

**TAHESHA L. WAY**
*Lt. Governor*

# State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ 08625

**MATTHEW J. PLATKIN**
*Attorney General*

**JEREMY M. FEIGENBAUM**
*Solicitor General*

June 24, 2024

**VIA ECF**
Honorable Peter G. Sheridan, U.S.D.J.
United States District Court
Clarkson S. Fisher Building
402 East State Street
Trenton, New Jersey 08608

    Re: *Association of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Platkin, et al. ("ANJRPC")*, No. 3:18-cv-10507; *Cheeseman, et al. v. Platkin, et al.*, No. 1:22-cv-04360; *Ellman, et al. v. Platkin, et al.*, No. 3:22-cv-04397

Dear Judge Sheridan:

    *United States v. Rahimi*, 602 U.S. \_\_\_, 2024 WL 3074728 (U.S. June 21, 2024), undermines these consolidated facial challenges.

    *Rahimi* begins by explaining that some courts and challengers "misunderstood the methodology of [the Court's] recent Second Amendment cases" and have thus taken an overly cramped approach to firearms laws after *NYSRPA, Inc. v. Bruen*, 597 U.S. 1 (2022). 2024 WL 3074728 at *6. Instead, *Rahimi* reiterates, the Second Amendment right is "not unlimited," and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at *5 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). As the majority explained, the Second Amendment right "was never thought to sweep indiscriminately." *Id.*

    Although courts must "examine our 'historical tradition of firearm regulation' to delineate the contours of the right," *Rahimi* provides three important instructions about the nature of that inquiry. *Id.* at *6 (quoting *Bruen*, 597 U.S. at 17). First, the majority emphasizes that "the appropriate analysis involves considering whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition," not



whether it has a precise historical match. *Id.* (emphasis added); *see also id.* (adding that modern laws "must comport with the principles underlying the Second Amendment," but "need not be a 'dead ringer' or a 'historical twin'"); *id.* at *30 (Barrett, J., concurring) ("Historical regulations reveal a principle, not a mold."). Second, *Bruen* and the Court's Second Amendment jurisprudence are "not meant to suggest a law trapped in amber." *Id.* at *6 (majority op.); *see also id.* ("[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers."); *id.* at *30 (Barrett, J., concurring) (explaining that "a challenged regulation need not be an updated model of a historical counterpart" and that "a test that demands overly specific analogues has serious problems"). Third, *Rahimi* confirms the high bar that attaches to facial Second Amendment challenges—noting that in attacking a gun regulation on its face, a challenger must "establish that no set of circumstances exists under which the Act would be valid." *Id.* at *6 (majority op.) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

Those principles were crucial to the majority's decision rejecting a challenge to the federal ban on firearms possession by those subject to a domestic-violence restraining order. *See* 18 U.S.C. § 922(g)(8). The United States had provided historical evidence of surety and going-armed laws, which *Rahimi* noted was "by no means identical" to Section 922(g)(8)'s ban on possession. 2024 WL 3074728 at *9. Surety laws had only "authorized magistrates to require individuals suspected of future misbehavior," including spousal abuse, "to post a bond," *id.* at *8, without ever disarming those individuals, *see id.* at *41 (Thomas, J., dissenting); while going armed-laws "punish[ed] those who had menaced others with firearms," including "forfeiture of the arms … and imprisonment," *id.* at 8-9 (majority op.) (citation omitted), but they did not prohibit violators from "carrying any firearm or ammunition, in any manner, in any place, at any time, and for any reason," *id.* at *44 (Thomas, J., dissenting). Neither categorically restricted possession. But *Rahimi* nevertheless explained that these laws stood for a broader principle: that the government could "disarm[] … individuals who pose a credible threat to the physical safety of others." *Id.* at *7-9 (majority op.). So while Section 922(g)(8) differed in "how" it achieved those goals, the Court "ha[d] no trouble concluding that § 922(g)(8) survives Rahimi's facial challenge," since the statute "fits comfortably within this tradition" of "preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at *5, *10.

*Rahimi*'s reasoning and conclusions all point in the State's favor. First, as the Supreme Court noted, "[a]t the founding, …. [s]ome jurisdictions banned the carrying of 'dangerous and unusual weapons.'" *Id.* at *5 (quoting *Heller*, 554 U.S. at 627); *see also id.* at *9 (using "dangerous or unusual weapons" language (quoting 4 W. Blackstone, Commentaries on the Laws of England 149 (10th ed. 1787)). That observation precisely tracks the State's argument that dangerous or unusual weapons like assault weapons (and instruments like LCMs) fall outside the Second Amendment's scope. *See, e.g.*, Dkt. 203 at 10-17 & n.2 (State's Reply Br.).[1] Nor did the Court endorse Plaintiffs' position that a

---

[1] All docket references are to the lead case, *ANJRPC*, No. 3:18-cv-10507.

weapon need only be commonly owned to achieve permanent protection, *see* Dkt. 175-7 at 21-22, 28 (Plaintiffs' Principal Br.), a position that has been rejected by both appellate courts to consider the issue, *see Bevis v. City of Naperville*, 85 F.4th 1175, 1190, 1198-99 (7th Cir. 2023); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 50-51 (1st Cir. 2024), and the vast majority of district courts, *see* Dkt. 203 at 10-17 (collecting cases).

Second, if this Court reaches the second step, the State's restrictions on assault weapons and large-capacity magazines fall comfortably within the principles underlying this Nation's historical tradition. As the State explained in painstaking detail, "New Jersey's laws are part of a long historical tradition, from pre-Founding English history through the Prohibition era, that restricted dangerous weapons and accessories once they spread in society and posed a public safety threat through characteristics that made them particularly dangerous or particularly susceptible to disproportionate criminal misuse." Dkt. 183-1 at 55-71 (State's Principal Br.); *see also* Dkt. 203 at 30-43 (State's Reply Br.). Plaintiffs' primary rejoinder has always been that the State failed to produce specific founding-era laws banning the possession of such weapons. *See, e.g.*, Dkt. 197 at 22-28 (Plaintiffs' Reply Br.). While their argument is incorrect as a matter of record evidence, *see, e.g.*, Dkt. 203 at 31-32 (compiling such laws into one place), *Rahimi* also makes clear this argument "misunderst[ands] the methodology" of *Bruen* as a matter of law, 2024 WL 3074728, at *6. After all, the "principles that underpin" the tradition of weapons laws are clear: no matter whether such laws restrict possession, manufacture, sale, or carry, the State may restrict "*specific weapons and accessories* that pose particular risk" so long as the law sufficiently "leave[s] other arms available for self-defense." Dkt. 183-1 at 69-70 (State's Principal Br.). By restricting a small subset of especially dangerous arms and only magazine capacity above ten, the State's laws fit those principles—the relevant inquiry.

One last point bears re-emphasizing: this Court need not determine whether *all* applications of the challenged laws are constitutional, so long as any applications of them are. After all, as *Rahimi* reiterated, in the context of a facial attack, the State "need only demonstrate that [its laws are] constitutional in some of [their] applications." *Id.* at *6. The State's laws plainly pass muster: at bare minimum, the undisputed record shows that restricting at least some of these weapons (and instruments like LCMs) is constitutional. *See* Dkt. 183-1 (State's Principal Br.); Dkt. 203 (State's Reply Br.). At bottom, Plaintiffs' facial challenge comes nowhere near invalidating the laws in their entirety.

*Rahimi* bolsters all of the State's arguments while undermining Plaintiffs'. This Court should grant summary judgment for the State.

                                              Respectfully yours,

                                              /s/ Christopher J. Ioannou
                                              Christopher J. Ioannou
                                              Deputy Attorney General

Cc: All counsel via ECF